UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NORTH AMERICAN COMPANY FOR
LIFE AND HEALTH INSURANCE,

    *Plaintiff*,

  v.

MAURICE HALL,

    *Defendant*.

Civil Action No. 23-246 (RDM)

**MEMORANDUM OPINION**

    This matter is before the Court on Plaintiff's Motion for Default Judgment. Dkt. 15. In its Complaint, Plaintiff North American Company for Life and Health Insurance ("NACOLAH") seeks judgment (1) declaring that Policy No. LB42194901 is "null, void, and/or void *ab initio*" and (2) setting aside, cancelling, and rescinding that policy. Dkt. 1 at 7 (Compl. ¶ 41). For the reasons explained below, the Court will **GRANT** NACOLAH's motion and will **GRANT** the proposed default judgment.

    Obtaining a default judgment requires two steps. First, the plaintiff must request that the Clerk of the Court enter a default. If the Clerk determines that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the [C]lerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, NACOLAH has complied with that requirement. *See* Dkt. 14. Second, the plaintiff must apply for a default judgment, either to the Clerk "for a sum certain or a sum that can be made certain by computation" or to the Court in "all other cases." Fed. R. Civ. P. 55(b)(1), (2).

1

"The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall*, 531 F. Supp. 2d 56, 57 (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

## I.

Prior to entering a default judgment, the Court must assure itself that it has both subject-matter and personal jurisdiction over the matter. *See Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *Herbin v. Seau*, 317 F. Supp. 3d 568, 572 (D.D.C. 2018). In the context of a default judgment, where an unresponsive party makes it difficult or impossible to hold an evidentiary hearing or to obtain jurisdictional discovery, a plaintiff need only make a prima facie showing that the court has personal jurisdiction. *Mwani*, 417 F.3d at 7. Here, NACOLAH has satisfied this minimal burden.

## A.

To establish subject-matter jurisdiction, NACOLAH relies on 28 U.S.C. § 1332, which vests the federal district courts with jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the dispute is between "citizens of different States." 28 U.S.C. § 1332(a). According to NACOLAH, diversity jurisdiction exists here because it is a citizen of Iowa, Hall is a citizen of the District of Columbia, and the amount in controversy exceeds $75,000. Dkt. 1 at 1–2 (Compl. ¶¶ 1–4). The Court agrees.

"[D]iversity of citizenship is determined at the time the complaint is filed." *Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997) (citing *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)). For purposes of § 1332, an individual is a citizen of the state in which she is domiciled. *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). Domicile requires "physical presence in a state" as well as the "intent to remain there for an

unspecified or indefinite period of time." *Id.* A corporation, in contrast, is a citizen of "its place or places of incorporation, as well as its principal place of business." *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016) (citing 28 U.S.C. § 1332(c)(1)).

First, NACOLAH alleges—and the Court has no reason to doubt—that the company is incorporated, and has its principal place of business, in Iowa. Dkt. 1 at 1 (Compl. ¶ 1). The documentary evidence appended to complaint, moreover, confirms that NACOLAH's principal office is located in West Des Moines, Iowa. Dkt. 1-1 at 2; *id.* at 10.

Second, there is ample evidence that Hall is not a resident of Iowa and that the parties are therefore diverse. Based on the Court's review of the insurance policy appended to NACOLAH's complaint, Dkt. 1-1 at 10, and NACOLAH's supplemental memorandum regarding jurisdiction, Dkt. 17 at 1–3; *id.* at 6–7, it appears that Hall was domiciled in (and thus a citizen of) the District of Columbia when the complaint was filed on January 27, 2023. To be sure, it also appears that Hall may have subsequently moved to Maryland. *Id.* at 3–4, 6–7. But even if he moved before the complaint was filed—and thus before the relevant jurisdictional facts were set—complete diversity would nonetheless exist between NACOLAH (which is a citizen of Iowa) and Hall (who was or is a citizen of the District of Columbia or Maryland).

Finally, the face value of Hall's life insurance policy is $200,000, which means the amount in controversy exceeds $75,000. Dkt. 1 at 1 (Compl. ¶ 3); *see also* Dkt. 1-1 at 4. Generally, "[w]hen a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977)).

Accordingly, the Court concludes that it has subject-matter jurisdiction under 28 U.S.C. § 1332.

**B.**

Federal Rule of Civil Procedure 4(k)(1) sets forth two requirements for establishing personal jurisdiction in federal court: First, the plaintiff must either properly serve the summons on the defendant or must obtain a waiver of service. Second, the defendant must be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Id.* NACOLAH has made a prima facie showing that both requirements have been satisfied.

First, the evidence supports NACOLAH's assertion that it properly effected service. As NACOLAH explains in the declaration of Aimee Clare, on March 17, 2023, counsel obtained a report from a private investigator who was engaged to locate Hall indicating that Hall had moved and now resided at 3910 Duvall Avenue in Baltimore, Maryland. Dkt. 11-1 at 2 (Clare Decl. ¶ 6). Subsequently, an independent process server retained by NACOLAH left the summons and complaint with an adult who confirmed that she "permanently reside[d] with . . . Hall at 3910 Duvall Avenue," *id.* (Clare Decl. ¶ 7); *see also* Dkt. 1-3 (return of service), and on April 14, 2023, NACOLAH filed a declaration, under the penalty of perjury, from an independent process server, who attested that on April 10, 2023, she delivered a copy of the summons and complaint to an adult over the age of 18 who resided with Hall at the address where the service was effected. Dkt. 10. No more was required to effect service. *See* Fed. R. Civ. P. 4(e)(2)(B).

NACOLAH has also carried its prima facie burden of showing sufficient contacts under the law of the jurisdiction "where the district court is located," Fed. R. Civ. P. 4(k)(1)(A)—here, the District of Columbia. Under D.C. law and constitutional standards, a "District of Columbia court may exercise personal jurisdiction over a person domiciled in . . . the District of

4

Columbia." D.C. Code § 13-422; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Here, there is reason to believe that Hall resided in the District of Columbia at the time NACOLAH initiated this action on January 27, 2023.  When Hall applied for the life insurance policy that is at the center of this dispute, he attested that, as of February 16, 2022, he resided in and was physically present to sign the forms in Washington, D.C.  Dkt. 1-1 at 19.  He also indicated that he owned the house in which he lived, which was located at 1015 Bryant St. NE, Washington, D.C. 20018. *Id*. at 10.  Hall further indicated that NACOLAH could continue to bill him in monthly increments at his Bryant Street address.  *Id.* at 18.  Finally, NACOLAH has submitted reports from five databases, which at least suggest that Hall continued to live at that Bryant Street address in Washington, D.C., through at least 2022 and possibly through the end of January 2023.  *See*, *e.g*., Dkt. 17-1 at 18, 21, 27.

The Court notes, however, that some conflict exists in the case law regarding whether domicile for the purpose of assessing personal jurisdiction is determined at the time the action commences, *see, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 401 (4th Cir. 2022), or at the time of service, *see, e.g.*, *Prince v. Intercept*, 634 F. Supp. 3d 114, 128 (S.D.N.Y. 2022).  To the extent that domicile at the time service is effected, as opposed to at the time the complaint is filed, is determinative—and to the extent a substantial question remains regarding when Hall moved to Baltimore—the Court need not rely on place of domicile alone.

Under D.C. Code § 13-423(a)(1), a "District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia[.]"  That statutory provision is "'given an expansive interpretation' that is 'coextensive with the due process clause.'"

*Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)).  Under this standard, the Court must determine whether NACOLAH has made a prima facie showing of specific jurisdiction.  "A defendant has minimum contacts with a forum" for purposes of asserting a claim arising in contract, if the contract at issue "has a 'substantial connection' with the forum."  *Id.* (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  A substantial connection exists if the contract was formed in the jurisdiction, the subject matter of the contract was tied to the jurisdiction, and the parties contemplated ongoing contract performance in the jurisdiction, including through monthly bills sent to an address in the jurisdiction.  *Id.* at 206.  Those factors are present here and are sufficient to establish that Hall purposefully availed himself of the benefits and protections of D.C. laws and reasonably should have anticipated being haled into court here.  *See id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

The Court, accordingly, concludes that NACOLAH has met its prima facie burden of showing that the Court has personal jurisdiction over Hall.

## II.

"Upon entry of default by the [C]lerk, the 'defaulting defendant is deemed to admit every well-pleaded allegation in the complaint.'"  *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002) (internal citation omitted)).  Here, the complaint alleged that Hall made false representations about his prior drug use and medical health history when applying for the life insurance policy at issue (Policy No. LB42194901), Dkt. 1 at 2–5 (Compl. ¶¶ 8–28), and that those false representations violated his duty to exercise reasonable care in completing the application, *id.* at 3, 5 (Compl. ¶¶ 14, 21, 22, 25, 26).  These

6

misrepresentations were material, moreover, because they affected NACOLAH's decision to insure Hall, *id.* at 6–7 (Compl. ¶¶ 33–38), and NACOLAH relied to its detriment on the representations in deciding to insure Hall, *id.* at 5–6 (Compl. ¶¶ 28–30). In addition, the policy remains contestable because it has been less than two years since issuance. *Id.* at 4 (Compl. ¶¶ 17–18). Finally, NACOLAH has returned all premiums paid, plus applicable interest. *Id.* at 7 (Compl. ¶ 40).

Accepting these allegations as conceded, NACOLAH is entitled to the entry of judgment rescinding the policy and declaring the policy null and void pursuant to 28 U.S.C. § 2201. *See Burlington Ins. Co. v. Okie Dokie, Inc*., 398 F. Supp. 2d 147, 153–54 (D.D.C. 2005) (setting forth elements supporting a claim for rescission based on material misrepresentations).

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's Motion for Default Judgment; will **GRANT** judgment for Plaintiff against the defaulting Defendant; and will enter an order rescinding the policy and declaring it null and void.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  January 4, 2024